**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

CARLSON NUNES,

                                    Petitioner,

                - v -                                    9:20-CV-1516
                                                         (GTS/DJS)

SUPERINTENDENT,

                                    Respondent.

**APPEARANCES:**                    **OF COUNSEL:**

CARLSON NUNES
Petitioner *Pro Se*
16-A-1722
Eastern NY Correctional Facility
Box 338
Napanoch, New York 12458

HON. LETITIA JAMES
Attorney General for the State of New York        PRISCILLA STEWARD, ESQ.
Attorney for Respondent                           Assistant Attorney General
28 Liberty Street
New York, New York 10005

**DANIEL J. STEWART**
**United States Magistrate Judge**

                    <u>**REPORT-RECOMMENDATION and ORDER**</u>[1]

          *Pro se* Petitioner Carlson Nunes, presently incarcerated at Eastern New York

Correctional Facility, was convicted following a jury trial of murder in the second degree,

manslaughter in the first degree, three counts of attempted robbery in the first degree,

---

[1] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

attempted robbery in the second degree, two counts of criminal possession of a weapon in the second degree, aggravated criminal possession of a weapon, two counts of criminal use of a firearm in the second degree, and assault in the second degree. Dkt. No. 1, Petition ("Pet.") at p. 1; *People v. Nunes*, 168 A.D.3d 1187 (3d Dep't 2019). He was sentenced to a prison term of twenty-two years to life on the second-degree murder conviction, with lesser determinate sentences on all additional convictions to run concurrently. *People v. Nunes*, 168 A.D.3d at 1187; Dkt. Nos. 17 & 17-1, State Court Record ("SR.") at pp. 183-185.[2]

Petitioner presently seeks a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on multiple grounds. *See* Pet. He filed several additional documents in support of the Petition, including a Memorandum of Law. Dkt. No. 1-1, Pet. Mem. Respondent has filed a Memorandum of Law in Opposition to the Petition. Dkt. No. 18-1, Resp. Mem. For the reasons that follow, this Court recommends that the Petition be **denied**.

## I. BACKGROUND

On February 20, 2015, Petitioner was arrested by the Schenectady Police Department for second-degree murder. SR. at p. 24. After his arrest, a fourteen-count indictment was handed up by a Schenectady County grand jury, charging Petitioner with second-degree murder, first-degree manslaughter, four counts of first-degree attempted robbery, second-degree attempted robbery, two counts of second-degree criminal possession of a weapon, aggravated criminal possession of a weapon, two counts of

---

[2] Citations to the State Court Record are to the Bates stamped pages provided with the record. Also made a part of the record is the trial transcript, Dkt. No. 17-2, which is cited as "Tr."

second-degree criminal use of a firearm, assault in the second degree, and tampering with physical evidence. SR. at pp. 28-35.

The facts underlying Petitioner's conviction, as relevant to this Petition, are briefly summarized as follows. On February 16, 2015, Petitioner received a phone call from his brother, Christopher Nunes. SR. at pp. 860-862 & 869. Christopher requested that Petitioner participate in a plan concocted by Christopher and Rab Everitt to acquire marijuana from Justice Pulver. *Id.* Yunis Johnson, Petitioner's girlfriend and the mother of his child, testified at trial that she was with Petitioner when he received that call from his brother. SR. at pp. 867, 869-871, & 986. Afterwards, Johnson went with Petitioner to his grandmother's home, where he retrieved an object, later identified as a black handgun, and placed it into the front pocket of his sweatshirt. SR. at pp. 872-876. Johnson testified that she recognized the gun and had seen it in Petitioner's possession on multiple occasions prior to that day. SR. at pp. 874-876 & 886. Petitioner then called Sheiquan Parker to request his assistance and participation in the planned transaction. SR. at pp. 877-879.

Johnson, Christopher, Everitt, Parker, and Petitioner all piled into a vehicle - a grey Nissan Cube belonging to Petitioner's grandmother - and drove to the City of Schenectady, where Everitt had arranged to meet Pulver. SR. at pp. 867, 879-882; Tr. at pp. 1460-1461. Johnson, Everitt, Parker, and Petitioner all testified that they planned to steal the marijuana from Pulver, who, for his part, intended to rob Everitt by disguising multiple wrapped plastic bags as a package of marijuana, which he could throw in the car

before grabbing Everitt's money and running away.  SR. at pp. 863, 883, 894-896, & 936; Tr. at p. 1458.

When the group arrived in Schenectady, they circled the block where the meeting was to occur, driving past the agreed-upon destination before dropping Petitioner, his brother, and Parker at a nearby convenience store, where the three hid in an alley.  SR. at pp. 864, 885-886, & 890-891; Tr. at p. 1459.  Johnson testified at trial that as Petitioner exited the vehicle, he asked "is everybody ready?" before pulling the black handgun out of his pocket.  SR. at p. 886.  Johnson and Everitt then proceeded to the meeting location where Pulver approached the vehicle, accompanied by Carlos Figueroa.  Tr. at pp. 1459 & 1478.  Everitt, seated in the passenger seat of the vehicle, rolled down the window and demanded to see the marijuana.  Tr. at pp. 1478-1479.  After Figueroa displayed the package, Everitt requested to smell the contents, at which point Pulver began to have suspicions about the deal and he and Figueroa turned to walk away.  SR. at pp. 904 & 906; Tr. at pp. 1479-1483.

As Pulver and Figueroa walked away from the vehicle, Petitioner, Parker, and Christopher ran from the alley.  Tr. at pp. 1485-1486.  Petitioner jumped over a snowbank, running directly towards Pulver and Figueroa, demanding they "give us the weed or give us everything you got."  SR. at p. 907; Tr. at p. 1494.  Pulver, who testified that both he and Figueroa were unarmed, observed an individual wearing a dark hoodie and holding a gun, and threw his hands in the air and ran.  SR. at pp. 898-900; Tr. at pp. 1488-1489.  Petitioner struck Figueroa in the head with the gun, which discharged and fired a bullet into Figueroa's neck, killing him.  SR. at pp. 989-992; Tr. at pp. 2298-2304.  Petitioner

4

and his accomplices fled the scene, and as they drove away, Petitioner stated that he "went to pistol whip him and the gun went off," telling Everitt "you better not say nothing, white boy." Tr. at pp. 1495-1498 & 1501-1502. Johnson testified that she disposed of the gun the next day. Tr. at pp. 1766-1769. Petitioner, for his part, testified at trial that he confronted Figueroa and Pulver after seeing them walk away from the deal. Tr. at pp. 3031-3037. He further testified that he was unarmed, and that Figueroa displayed a gun, at which point he responded by knocking the gun from Figueroa's hands and then picking it up. Tr. at pp. 3037-3040. He testified that he swung the gun at Figueroa in self-defense when it discharged. SR. at pp. 987-990 & 992; Tr. at pp. 3040-3041.

The jury found Petitioner guilty of murder in the second degree, manslaughter in the first degree, three counts of attempted robbery in the first degree, attempted robbery in the second degree, two counts of criminal possession of a weapon in the second degree, aggravated criminal possession of a weapon, two counts of criminal use of a firearm in the second degree and assault in the second degree. *People v. Nunes*, 168 A.D.3d at 1187; SR. at pp. 183-185. He was sentenced to twenty-two years to life on the murder conviction, with lesser determinate sentences on all remaining convictions to run concurrently. *People v. Nunes*, 168 A.D.3d at 1187.

Petitioner appealed to the New York Appellate Division, Third Department, in a counseled brief, asserting the following arguments: (1) the trial court erred by permitting the prosecution to repeatedly impeach Sheiquan Parker, a prosecution witness; (2) the court erred by denying a request by the defense to read a series of adverse inference charges to the jury; (3) prosecutorial misconduct during summations resulted in a

violation of his constitutional right to a fair trial; (4) the conviction was against the weight of the evidence; (5) the trial court abused its discretion by allowing the prosecution to present prior bad act evidence related to his possession of a handgun; and (6) the court erred by changing its ruling on justification instructions for the jury after summations had been delivered. SR. at pp. 194-257. On January 10, 2019, the Appellate Division issued its decision affirming his conviction. *People v. Nunes*, 168 A.D.3d 1187. The New York Court of Appeals denied leave to appeal on April 2, 2019. *People v. Nunes*, 33 N.Y.3d 979 (2019). Petitioner subsequently filed a *pro se* coram nobis motion in April of 2020. SR. at pp. 1079-1107. On July 17, 2020, the Appellate Division denied the motion, and the Court of Appeals denied leave to appeal. SR. at pp. 1228-1232 & 1236.

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234697, at *3 (S.D.N.Y. Aug. 28, 2003). A federal court may not grant *habeas* relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either:

> 1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006).

The Second Circuit has summarized the application of the standard of review under AEDPA as follows:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief:  1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled?  2) If so, was the state court's decision "contrary to" that established Supreme Court precedent?  3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. 362 (2000) and *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).  The standard of review under § 2254(d) is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt.  *Renico v. Lett*, 559 U.S. 766, 773 (2010).  "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The phrase "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.  A state court decision is "contrary to" established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts." *Id.* at 413.  A state court decision is an "unreasonable application" of established Supreme Court precedent "if the state court identifies the correct governing legal principle from th[e] Court's

decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001).

### III. DISCUSSION

#### A. Procedural Issues

##### 1. Claims not Cognizable in Federal Habeas Proceeding

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "Simply put, 'federal habeas corpus relief does not lie for errors of state law.'" *DiGuglielmo v. Smith*, 366 F.3d 130, 137 (2d Cir. 2004) (quoting *Estelle v. McGuire*, 502 U.S. at 67). Certain claims present pure questions of New York law, which are not cognizable on federal habeas review and thus are no basis for relief.

Petitioner's first claim is that the trial court erred by refusing to give an adverse inference instruction to the jury related to missing evidence. Pet. at pp. 4-5; Pet. Mem. at pp. 27-30. Petitioner alleges that the investigating police agency failed to preserve surveillance video evidence and certain text messages. Pet. Mem. at pp. 28-29 This claim derives from New York common law cited in *People v. Handy*, 20 N.Y.3d 663 (2013), which examined when an adverse inference charge should be given to a jury in response to the prosecution's failure to preserve evidence.

"The propriety of a state trial court's jury instructions is generally a matter of state law, and a claim raised on that basis is not cognizable on habeas review unless the challenged instruction 'violated some right which was guaranteed to the defendant by the Fourteenth Amendment.'" *Bowers v. Noeth*, 2020 WL 6746829, at *7 (E.D.N.Y. Nov. 17, 2020) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)). "The entitlement to an adverse inference charge arises under 'the New York law of evidence,' not the federal constitution." *Id.* (quoting *People v. Handy*, 20 N.Y.3d at 669). This state-law claim was already raised and rejected in Petitioner's direct appeal. The Appellate Division found that Petitioner could not establish his entitlement to the requested adverse inference charge since the investigating agency had no duty to preserve evidence over which it did not have constructive possession. *People v. Nunes*, 168 A.D.3d at 1192-93. Petitioner does not argue that the state trial court's allegedly erroneous refusal to give the charge, nor that the Appellate Division's affirmance of that decision, rises to the level of a federal constitutional violation. Accordingly, his claim is a matter of state law that is not cognizable on habeas review.

Petitioner's fourth ground for relief alleges that the trial court improperly admitted prior bad act evidence, specifically related to his previous possession of a handgun like the one used during the shooting. Pet. at pp. 7-8; Pet. Mem. at pp. 42-43. Respondent argues that this claim has not been exhausted and is not cognizable on habeas review. Resp. Mem. at pp. 31-34. While Petitioner raised this argument on direct appeal, he relied exclusively on state law with no reference to the federal constitution or law. This claim was analyzed solely for state evidentiary error and is therefore unexhausted for purposes

of federal habeas review. *See Rodriguez v. Superintendent, Collins Corr. Facility*, 549 F. Supp. 2d 226, 243-45 (N.D.N.Y. 2008). However, even if Petitioner's claim were not procedurally barred, no habeas relief would lie for this alleged error.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," *Estelle v. McGuire*, 502 U.S. at 67-68, including a state court's evidentiary rulings. *Rodriguez v. Superintendent*, 549 F. Supp. 2d at 244. "Federal courts reviewing state evidentiary matters can issue a writ of habeas corpus only if the petitioner demonstrates that the alleged error violated an identifiable constitutional right, and that the error 'was so extremely unfair that its admission violates fundamental conceptions of justice.'" *Id.* (quoting *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998)). To that end, "Petitioner 'bears a heavy burden because evidentiary errors generally do not rise to constitutional magnitude.'" *Id.* at 244 (quoting *Sierra v. Burge*, 2007 WL 4218926, at *5 (S.D.N.Y. Nov. 30, 2007)).

Under New York law, "evidence of uncharged crimes or prior bad acts may be admitted where [it] fall[s] within the recognized *Molineux* exceptions - motive, intent, absence of mistake, common plan or scheme and identity - or where such proof is inextricably interwoven with the charged crimes, provides necessary background or completes a witness's narrative." *People v. Burnell*, 89 A.D.3d 1118, 1120 (3d Dep't 2011). Here, the trial court determined that Yunis Johnson would be permitted to testify that she had previously seen Petitioner in possession of the gun he possessed on the night of the shooting. SR. at p. 310. Allowing this testimony gave context to Johnson's ability to recognize the weapon as belonging to Petitioner. The Appellate Division held that

"[t]he evidence regarding defendant's prior possession of a handgun was inextricably interwoven with the charged crimes and tended to show that defendant had access to the weapon that was used in the shooting." *People v. Nunes*, 168 A.D.3d at 1192. This was particularly true given Petitioner's claims at trial that he was unarmed on that day. The state court's findings on this state law question was not an unreasonable one and certainly was not so unfair as to violate basic notions of due process. *See Rodriguez v. Superintendent*, 549 F. Supp. 2d at 244. This claim, therefore, is not a basis for habeas relief.

### *2. Procedural Default*

In Petitioner's fifth ground for relief, he alleges that the trial court improperly failed to discharge "grossly unqualified" sworn jurors. Pet. at pp. 9-10; Pet. Mem. at pp. 52-58. During the trial, one of the alternate jurors reported to the court that she had observed a member of the defendant's family video recording members of the jury with a cell phone. Tr. at pp. 1938 & 1975. After some investigation, the individual recording was determined to be the Petitioner's sister. Tr. at pp. 1940-41. The trial court judge questioned the sister under oath and found that the photos were actually taken of the Petitioner, rather than the jury. Tr. at pp. 1941-44. The trial court discharged the juror who had brought the issue to the court's attention and questioned the remaining jurors individually regarding whether they were aware of the issue and if so, whether it would impact their ability to remain fair and impartial. Tr. at pp. 1955-57.

Respondent asserts that this claim is both unexhausted and meritless. Resp. Mem. at pp. 34-38. Petitioner did not assert the claim in his direct appeal, but instead raised the

issue solely in the context of a coram nobis motion, arguing that his appellate counsel was ineffective for failing to argue the claim. SR. at pp. 1086-1107. However, the Second Circuit has clearly held that asserting a claim of ineffective assistance of counsel in the context of a coram nobis motion does not exhaust the underlying constitutional claim. *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001). Petitioner has not established cause for his failure to exhaust this claim, nor has he offered any evidence of actual innocence that might suggest a fundamental miscarriage of justice. The claim is therefore unexhausted and is not properly before this Court. *See id.* ("a petitioner cannot show exhaustion unless he has 'fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts.'") (quoting *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981)).

Nevertheless, even if this claim had been exhausted and properly before the Court, it is meritless and would not provide a basis for habeas relief. Under 28 U.S.C. § 2254(e)(1), a state court's conclusion that a jury was impartial is entitled to a "presumption of correctness" which can only be overcome by "clear and convincing evidence" to the contrary. Analysis begins "with the settled rule that this Court in a federal habeas proceeding presumes that the state court finding on juror bias is correct." *Shaw v. Superintendent, E. Corr. Facility*, 2012 WL 4854643, at *8 (N.D.N.Y. Oct. 11, 2012). "The Supreme Court has also held that the identification of juror bias is a factual finding concerning the juror's state of mind that is decidedly within the province of the trial judge." *Id.* As discussed above, the trial court dismissed the alternate juror who initially reported the photos being taken. Tr. at pp. 1955-57. When two jurors, questioned

separately, expressed concerns about being photographed and fear of potential retribution, the judge proceeded to question them specifically regarding their ability to remain fair and impartial.  Tr. at pp. 1961-62, 1988-89.  Both jurors were questioned at length regarding this issue and confirmed that they would remain able to be fair and impartial. Tr. at p. 1966 & 1990, 2014, 2035-2039.

For example, in an exchange with one juror whom Petitioner alleges to have been grossly unqualified, the trial judge asked: "Now, having said all that, and having received the reassurance that I've given you, are you sure you can remain fair and impartial going forward?" Tr. at p. 1962.  The juror initially responded "I think so. I would like to hope so, that I can." *Id.*

The judge further inquired of this juror:

Q: But I want to know if you think that it will impair or might impair your ability to be fair and impartial going forward. If it is, you tell me that. If it's not, that's fine. I just want to know.
A: No, I can still be fair.
Q: You sure?
A: Yeah.
Q: And impartial?
A: Impartial, right.
Q: Okay, I asked you, or asked many people, here's the statement, A, B or C, I know I can be fair and impartial going forward, A, I know I can't be fair and impartial going forward, B, C, I don't know if I can be fair and impartial going forward. A, B or C?
A: Still A.
Q. Still A?
A. Yes.

Tr. at pp. 2035-2036.

When speaking to the other contested juror, the trial judge inquired: "I just need to know if you're confident and can assure me that you can be fair and impartial going

forward, if you can assure me of that." Tr. at p. 1993.  The juror initially replied "Yes. I think I can. Yes." Tr. at p. 1993.  In response to defense counsel's concerns about that juror, the trial judge brought him back the following day and inquired further:

> Q: [Juror], you've had the benefit of the evening to digest and think about what happened. Do you have anything you'd like – anything further you want to talk to me about or add or any additional thoughts?
> A: No, I thought about it and I'm okay with it.
> Q: Okay. I'm going to ask you the question I went over with you yesterday. And the question I asked many of the jurors during the voir dire. And the statement is I know I can be fair and impartial going forward, Judge, and the answers to that is yes, Judge, A, yes, Judge I agree with that statement, B, Judge, no, I don't agree with that statement, or C, I'm not sure I can agree with that statement. What's your answer, A, B or C?
> A: It's still A. A, I can be fair and impartial.
> Q: You're sure?
> A. I'm sure.

Tr. at pp. 2038-2039.

Given the assurances by both jurors that they remained able to be fair and impartial, it was not unreasonable for the trial court to conclude that the jurors were not grossly unqualified and refuse to discharge them.

## B. Prosecutorial Misconduct

Petitioner argues that he is entitled to habeas relief based upon prosecutorial misconduct during summation. Pet. at pp. 5-6; Pet. Mem. at pp. 30-33.  More specifically, he asserts that the prosecutor misstated both facts and the law, and improperly shifted the burden of proof during his closing argument.  Pet. Mem. at p. 30.

"The habeas court's scope of review as to claims of prosecutorial misconduct is quite limited." *Ogletree v. Graham*, 559 F. Supp. 2d 250, 259 (N.D.N.Y. 2008).  "To prevail on a prosecutorial misconduct claim, a habeas petitioner must demonstrate that

the prosecutor engaged in 'egregious misconduct.'" *Williams v. Duncan*, 2007 WL 2177075, at *26 (N.D.N.Y. July 27, 2007) (quoting *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir. 1990)).  It "is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  Instead, the question on habeas review is whether the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  A habeas petitioner raising a claim of prosecutorial misconduct "must demonstrate that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994).  The Second Circuit has held that habeas courts should consider the following factors in determining whether prosecutorial misconduct caused actual prejudice: "[1] the severity of the misconduct; [2] the measures adopted to cure the misconduct; and [3] the certainty of conviction absent the improper statements." *Floyd v. Meachum*, 907 F.2d at 355.

Viewing the record as a whole, the Appellate Division's determination on this issue was not objectively unreasonable.

Petitioner objects broadly that the "prosecutor repeatedly misstated the facts, misstated the law, and shifted the burden of proof." Pet. Mem. at p. 30.  He also specifically objects to the prosecutor's characterizations of Petitioner's defense as having a "glaring hole" and being a "theory." *Id.* at pp. 30-31.  However, "the Second Circuit and district courts in this Circuit have allowed prosecutors much leeway in

their closing arguments." *Moye v. Corcoran*, 668 F. Supp. 2d 523, 545 (W.D.N.Y. 2009) (citing cases). "A prosecutor is not precluded from vigorous advocacy, or the use of colorful adjectives, in summation." *United States v. Rivera*, 971 F.2d 876, 884 (2d Cir. 1992); *see also United States v. Jaswal*, 47 F.3d 539, 544 (2d Cir. 1995) (finding no misconduct when prosecutor characterized the defendant's case as a "fairy tale."). Here the few comments made by the prosecutor, highlighting what he believed to be weaknesses in the defendant's case, clearly fall on the side of vigorous advocacy.

Nor did these comments shift the burden of proof. *See* Pet. Mem. at p. 30. First, the complained of comments spoke not to which party bore the burden of proof, but the respective strength of the evidence on each side. Second, the record establishes that the prosecutor understood and conveyed to the jury that the prosecution bore the burden in this case. *See, e.g.*, Tr. at pp. 3375, 3761, 3420, 3422-3423. He specifically and directly told the jury "I have to prove each and every element of each and every crime beyond a reasonable doubt." Tr. at p. 3375. With respect to Petitioner's justification defense, one of the final things the prosecutor told the jury was "the burden is on me." Tr. at pp. 3422-23; *see also* Tr. at 3423 ("The burden is to disprove justification."). Despite the comments Petitioner now objects to, there is no basis for finding that there was any question about who bore the burden of proof at trial. In addition to the prosecutor's own comments, defense counsel made that point abundantly clear. Tr. at pp. 3248-49, 3253, & 3298-99. And the trial court also stated repeatedly that the prosecution bore that burden. *See, e.g.*, Tr. at pp. 3867-72.

Accordingly, the Court recommends that any prosecutorial misconduct as alleged by Petitioner does not warrant habeas relief in this matter.

## C. Sufficiency of the Evidence

Finally, Petitioner contends that there was legally insufficient evidence to support several of his convictions. Pet. at p. 6; Pet. Mem. at pp. 33-42. This claim is not a basis for relief.

In seeking habeas relief based on alleged insufficiency of the evidence, a petitioner "bears a 'very heavy burden.'" *Torres v. O'Meara*, 353 F.Supp.3d 180, 188 (N.D.N.Y. 2019) (quoting *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000). The standard of review for a legal sufficiency claim is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Hogan v. West*, 448 F.Supp.2d 496, 512 (W.D.N.Y. 2006) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). Therefore, a habeas court may only overturn a conviction if, based upon the evidence presented at trial, "*no* rational trier of fact could have found that the prosecution established the defendant's guilt beyond a reasonable doubt." *Id.* (emphasis in original). This is not the case here.

### 1. Attempted Robbery and Felony Murder Charges

Petitioner first argues that there was insufficient evidence to support the attempted robbery charges which served as the predicate for his felony murder conviction. Pet. Mem. at pp. 34-36. Specifically, he contends that the evidence established at best that

17

Petitioner and his associates were engaged in an attempt to commit larceny by trick. *Id.* at p. 35.

> Under New York law, a person is guilty of robbery in the second degree:

> when he forcibly steals property and when:

> 1. He is aided by another person actually present; or

> 2. In the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:

> (a) Causes physical injury to any person who is not a participant in the crime; or

> (b) Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; or

> 3. The property consists of a motor vehicle, as defined in section one hundred twenty-five of the vehicle and traffic law.

N.Y. Penal Law § 160.10.

> Meanwhile, a person is guilty of robbery in the first degree:

> when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:

> 1. Causes serious physical injury to any person who is not a participant in the crime; or

> 2. Is armed with a deadly weapon; or

> 3. Uses or threatens the immediate use of a dangerous instrument; or

> 4. Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime.

N.Y. Penal Law § 160.15.

An individual is liable for attempt to commit either crime "when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." N.Y. Penal Law § 110.00.

While Petitioner disputes the accuracy of much of the testimony presented by the prosecution, on a sufficiency challenge this Court must view the evidence "in the light most favorable to the prosecution." *Jackson v. Virginia*, 443 U.S. at 319; *see also Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999). Under that standard, the record clearly establishes that legally sufficient evidence existed for each of the attempt charges for which he was convicted.[3]

Petitioner maintains that there was insufficient evidence to establish he was in possession of a weapon before the shooting, Pet. Mem. at pp. 35-36, but several people testified that he was. SR. at pp. 873-76. There was also testimony that the jury credited, at least to some degree, that Petitioner and his associates had gone to the location with the intent to rob Pulver, SR. at p. 883, who died as a result of injuries admittedly caused by Petitioner. This evidence was legally sufficient for each attempted robbery charge since each is established upon proof of an attempt to forcibly steal when either a weapon is displayed or serious physical injury results. N.Y. Penal Law §§ 110.00, 160.10, & 160.15. Given that there was legally sufficient evidence in support of the attempted robbery charges that served as the predicate offenses for the felony murder conviction,

---

[3] And by extension for the felony murder conviction.

there was also legally sufficient evidence to support that claim. *See* N.Y. Penal Law § 125.25(3).

### 2. Weapons and Manslaughter Charges

While arguments as to the legal sufficiency of evidence are cognizable in federal court under habeas corpus review, "weight of the evidence" arguments are founded in New York Criminal Procedure Law § 470.15(5), and thus are not cognizable. *Garbez v. Greiner*, 2002 WL 1760960, at *8 (S.D.N.Y. 2002); *see also McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2018) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus."); *Torres v. O'Meara*, 353 F.Supp.3d 180, 187-88 (N.D.N.Y. 2019); *Kimbrough v. Bradt*, 949 F.Supp.2d 341, 362 (N.D.N.Y. 2013). Petitioner arguments regarding the weapons and manslaughter charges go to the weight, not the sufficiency, of the evidence and as a result those arguments should be rejected.

Petitioner contends generally that evidence presented to the jury was contradictory and overly reliant on cooperating witnesses. Pet. Mem. at p. 33. Claims of this nature are not cognizable and should be dismissed. *See*, *e.g.*, *Jones v. Chappius*, 2020 WL 1472907, at *5-6 (E.D.N.Y. Mar. 26, 2020); *Romero v. Napoli*, 2013 WL 3583724, at *9 (S.D.N.Y. July 15, 2013), *report and recommendation adopted*, 2013 WL 6170636 (S.D.N.Y. Nov. 25, 2013).

Petitioner's more specific assertions also lack merit. He takes exception, for example, to the lack of corroborating witnesses regarding the shooting itself. *See* Pet. Mem. at pp. 37-38. The "lack of corroboration is irrelevant because that speaks to the

weight and not the sufficiency of the evidence." *United States v. Burden*, 600 F.3d 204, 214 (2d Cir. 2010); *see also Jackson v. Senkowski*, 2007 WL 2275848, at *13 (E.D.N.Y. Aug. 7, 2007) ("lack of corroboration . . . does not make that testimony insufficient.").

Petitioner's argument that the evidence that he possessed a weapon throughout this encounter was "wanting, and impossible to believe," Pet. Mem. at pp. 39-40, clearly goes to the weight of the evidence, not its sufficiency.

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition (Dkt. No. 1) be **DENIED** and **DISMISSED**; and it is further

**RECOMMENDED**, that no Certificate of Appealability be issued because Petitioner has failed to make "a substantial showing of the denial of a constitutional right" as required by 28 U.S.C. § 2253(c)(2);[4] and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN**

---

[4] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see also Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation").

**FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 & 6(a).

Date:   November 14, 2023
       Albany, New York


Daniel J. Stewart
U.S. Magistrate Judge